John H. WRIGHT, III; Mark W. Wright; Lynn Wright Parker;
and Valley Fast Foods, Inc. *v.* COMPTON, PREWETT,
THOMAS & HICKEY, P.A. and W.I. Prewett

93-522                                              866 S.W.2d 387

Supreme Court of Arkansas
Opinion delivered December 6, 1993

*Crockett, Brown & Worsham, P.A.*, by: *C. Richard Crockett* and *Christopher O. Parker*, for appellants.

*Shackleford, Shackleford & Phillips, P.A.*, by: *Norwood Phillips*, for appellees.

ROBERT H. DUDLEY, Justice. Plaintiffs, John H. Wright, III, Mark W. Wright, Lynn Wright Parker and Valley Fast Foods, Inc., filed a malpractice action against defendants, Compton, Prewett, Thomas and Hickey, P.A., a professional corporation of attorneys, and William I. Prewett, an attorney employed by the corporation. Among affirmative defenses, the defendents pleaded that the statute of limitations had run and moved for summary judgment on that ground. The trial court granted the motion. We reverse and remand.

The facts surrounding the limitation issue are as follows. The suit was commenced on January 11, 1989. Prior to that, in the fall of 1985, Valley Fast Foods, Inc., a Texas corporation, owned Burger King fast food franchises and restaurant equipment in the Rio Grande Valley, fifty percent of the common stock in a corporation that owned the Benton Motor Inn in Benton, twenty-five percent of the common stock in a corporation that owned the International Inns of Louisiana, and other lesser items of personal property. The stockholders in Valley Fast Foods were J. H. Wright, Jr. and his three children, J. H. Wright, III, Mark W. Wright, and Lynn Wright Parker. In the fall of 1985, the stockholders wanted to separate the Burger King restaurants from the ownership of common stock in the motel corporations. They retained William I. Prewett to advise them on the separation of assets. By letter dated September 4, 1985, Prewett suggested that the separation of assets could be a tax free reorganization under section 355 (d) of the Internal Revenue Code.

Prewett subsequently prepared the documents to complete the three steps required for the reorganization. The steps consisted of the formation of a new corporation named Wright III

Foods, Inc.; the transfer of some of the assets, primarily the Burger King restaurant franchises and equipment, from Valley Fast Foods to Wright III Foods, Inc.; and the exchange by plaintiff shareholders of their stock in Valley Fast Foods for stock in Wright III Foods, Inc. In the terms used in section 355, Valley Fast Foods was the distributing corporation and Wright III Foods, Inc. was the controlled corporation. The Internal Revenue Service subsequently ruled that the reorganization was taxable, not tax free, because, pursuant to subsection (b)(1)(A) of section 355 and the applicable regulations, both the distributing and the controlled corporations must be actively engaged in a business before and after the reorganization, and the passive ownership of the corporate stock in the motels did not qualify as actively engaging in a business. Valley Fast Foods and the stockholders in Wright III Foods, Inc., plaintiffs, were required to pay taxes and interest of more than $350,000 as a result of the reorganization being ruled to be taxable. The plaintiffs' suit alleges that defendants are liable for malpractice because the reorganization was taxable.

The procedure involving the motion for summary judgment is well settled. The defendants, as the movants for summary judgment, bore the burden of demonstrating that there was no genuine issue of material fact. *Mount Olive Water Ass'n* v. *City of Fayetteville*, 313 Ark. 606, 856 S.W.2d 864 (1993). All proof submitted had to be viewed most favorably to the party resisting the motion, and any doubt and all inferences should have been resolved against the moving party. *Id.* Once the movant made a prima facie showing of entitlement, however, the responding party had to meet proof with proof to demonstrate there was remaining a genuine issue of a material fact. *Id.* The response and supporting material had to set forth specific facts showing that there was a genuine issue for trial. *Id.* Our review is limited to examining the evidentiary items presented and determining whether the trial court correctly ruled that those items left all material facts undisputed. *Hardie* v. *Estate of Davis*, 312 Ark. 189, 848 S.W.2d 417 (1993).

The parties agree that the applicable statute of limitation is the three-year period provided in Ark. Code Ann. § 16-56-105 (1987). *See also Goldsby* v. *Fairley*, 309 Ark. 380, 831 S.W.2d 142 (1992). They also agree that the limitation period

begins to run, in the absence of concealment of the wrong, when the negligence occurs, not when it is discovered by the client. *Chapman* v. *Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991).

In the trial court the defendants attached affidavits and supporting materials to their motion for summary judgment, and those documents constituted proof that the legal services involved in the reorganization were completed by the end of December 1985. Since suit was not filed until January 11, 1989, they contended the period of limitation had run. The documents prepared by Prewett do in fact reflect 1985 dates, and another document reflects that the tax deficiency was assessed for the 1985 calendar tax year. This proof constituted a prima facie showing of entitlement to summary judgment and required the plaintiffs to meet the proof with proof.

The gist of plaintiffs' response was that Prewett did not in reality complete the transaction until sometime after January 14, 1986, because, on and after that date, many of the documents were signed but backdated to reflect that they were executed in 1985. In his affidavit, J. H. Wright, III, stated that the certificates of stock in Wright III, Inc., were not delivered to him until January 14, and, after that date, they were backdated to reflect the earlier date. In the same affidavit he additionally stated that Prewett did not provide him with the contract required for the transfer of the Burger King franchises to Wright III Foods, Inc. until January 14, and that contract, like other documents, was dated back to reflect an earlier date.

In another affidavit, J. H. Wright, Jr, in setting out the time of Prewett's work, stated:

> Burger King did not allow its franchises to be in the name of a corporation unless there was an agreement between the stockholders which restricted the transfer of shares. The original of the document which would allow the new corporation to engage in business as a Burger King was sent by copy of the January 13, 1986 letter to John W. Wright, III. Such agreement was the "Contract Restricting Transfer of Shares." Such agreement was, like the other documents, signed after January 13, 1986, and backdated to December 1, 1985.

■ Other documentary evidence submitted by the plaintiffs, such as the defendants' billing statement and a deed to transfer Valley Fast Foods' interest in a condominium to Wright III Foods, Inc., additionally indicate that the reorganization was not completed in 1985. When the proof submitted is viewed most favorably to the parties resisting the motion, here the plaintiffs, and any doubt and all inferences are resolved against the moving party, here the defendants, we have no hesitancy in holding that a genuine issue existed about the date of the completion of the reorganization and whether the period of limitation had run. Consequently, the trial court erred in granting summary judgment on this issue.

■ The defendants do not admit giving erroneous advice, and they do not admit that the assessment by the Internal Revenue Service is a correct assessment, but, in oral argument, they contended that, even if they might have committed malpractice, it occurred in the fall of 1985 when they gave erroneous advice. In support of the argument they cited a sentence from *Ford's, Inc.* v *Russell Brown & Co.*, 299 Ark. 426, 773 S.W.2d 90 (1989). Neither the sentence, nor the case, affords the defendants relief. The holding in that case is that the limitation period in tax malpractice cases begins to run, in the absence of concealment of the wrong, when the negligence occurs, and not when the government assesses additional taxes. In *Chapman* v. *Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991), we made it clear that the limitation period begins to run in malpractice cases upon the occurrence of the last element essential to the cause of action. In this case that would be the date of the last act in the reorganization. If we were to adopt the defendants' position it could require a plaintiff to bring suit against his attorney before a lengthy transaction were completed, and that, in turn, could well deny the attorney the chance to effectuate the proper result.

Reversed and remanded.