Cite as 2023 Ark. App. 351

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CV-22-497

| | |
|---|---|
| ASHTON PLACE HEALTH AND REHAB, LLC<br><br>APPELLANT<br><br>V.<br><br><br>JOYCE RUSSELL, AS SPECIAL ADMINISTRATRIX OF THE ESTATE OF JUNE MARIE PELHAM, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF JUNE MARIE PELHAM<br><br>APPELLEE | Opinion Delivered August 30, 2023<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT [NO. 66GCV-21-46]<br><br>HONORABLE DIANNA HEWITT LADD, JUDGE<br><br><br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Ashton Place Health and Rehab, LLC (Ashton Place), appeals the Sebastian County Circuit Court order denying its motion to compel arbitration of Joyce Russell's complaint filed as special administratrix of the estate of June Marie Pelham, deceased, and on behalf of the wrongful death beneficiaries of Pelham (the Estate).[1] On appeal, Ashton Place argues that the circuit court erred by finding that the parties did not enter into a valid agreement to arbitrate. We affirm.

---

[1]Russell and Pelham were sisters.

Pelham was a resident at Ashton Place from March 15 through March 18, 2019. She died on March 19 at Baptist Health. On March 19, 2021, the Estate filed a tort complaint against Ashton Place, alleging that Ashton Place's negligent care and treatment caused Pelham's injuries and death.

On June 22, Ashton Place moved to compel arbitration of the Estate's complaint. It attached a March 15, 2019 admission agreement incorporating an arbitration agreement and an April 7, 2009 power of attorney. In the 2009 power of attorney, Pelham designated Russell as "my Limited Attorney in fact pursuant to A.C.A. 28-68-201 et seq. and to act as my attorney or proxy in respect to any medical and medically related issues only."

On July 7, the Estate responded to the arbitration motion and argued that Russell lacked the authority to agree to arbitrate on Pelham's behalf because the power of attorney did not extend to litigation matters. It cited *Courtyard Gardens Health & Rehabilitation, LLC v. Williamson*, 2016 Ark. App. 606, 509 S.W.3d 685, and *Malvern Operations, LLC v. Moss*, 2020 Ark. App. 355, 605 S.W.3d 291. The Estate also attached a power of attorney dated July 31, 2014, notarized and signed by Pelham:

<u>POWER OF ATTORNEY</u>

I, June M. Pelham, as principal, presently residing at 2704 Backbone Road, Greenwood Arkansas Sebastian County, and being of sound mind and under no undue influence hereby designates Letha Joyce Russell, my Attorney in fact pursuant to A.C.A. 28-68-201 et. seq. and to act as my attorney or proxy in respect to any stock, bond or other financial investment, real estate and medical issues.

This Power of Attorney shall not be affected by subsequent disability or incapacity of principal or lapse of time. All acts done by my Attorney in fact pursuant to this

2

durable Power of Attorney during any period of disability or incapacity, have the same effect and inure to the benefit of and bind me and my successors in interest.

I hereby revoke any Power of Attorney executed prior to this date.

On July 13, Ashton Place replied and asserted that *Williamson* and *Moss* are distinguishable. It also argued that an interpretation of the power of attorney to exclude the authority to enter into an arbitration agreement is prohibited by the Federal Arbitration Act. It relied on *Kindred Nursing Centers Limited Partnership v. Clark*, 581 U.S. 246 (2017).

On April 15, 2022, the court entered an order denying Ashton Place's motion to compel arbitration. The court found the power of attorney void of any specific grant of decision-making authority regarding litigation, legal decisions, or legal claims. On May 12, Ashton Place appealed the court's order.

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2020). We review a circuit court's order denying a motion to compel arbitration de novo on the record. *Alltel Corp. v. Rosenow*, 2014 Ark. 375. We are not bound by the circuit court's decision, but in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal. *Diamante v. Dye*, 2013 Ark. App. 630, 430 S.W.3d 196.

In deciding whether to grant a motion to compel arbitration, two threshold questions must be answered: (1) whether there is a valid agreement to arbitrate between the parties,

3

and (2) if such an agreement exists, whether the dispute falls within its scope. *Moss*, 2020 Ark. App. 355, 605 S.W.3d 291. The first question is the issue in this appeal.

We look to state contract law to decide whether the parties' agreement to arbitrate is valid. *Id.* The same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *Id.* As with other types of contracts, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Id.* As the proponent of the arbitration agreement, Ashton Place has the burden of proving these essential elements. *Id.*

On appeal, Ashton Place argues that the circuit court erred by finding that the parties did not enter into a valid agreement to arbitrate. It asserts that the language in the 2014 power of attorney[2] granted Russell the broad authority to act on Pelham's behalf, including the power to enter into an arbitration agreement, and it claims that the power of attorney's reference to "my Attorney in fact pursuant to A.C.A. 28-68-201 et seq." indicates that Pelham granted Russell all the powers within that subchapter.

A power of attorney is an instrument in writing by which one person, as principal, appoints another as her agent and confers upon that agent the authority to perform certain specified acts or kinds of acts on behalf of the principal. *In re Estate of Garrett*, 81 Ark. App. 212, 100 S.W.3d 72 (2003). The nature and extent of the agent's authority must be

---

[2]In its brief, Ashton Place concedes the 2014 power of attorney is the operative document.

4

ascertained from the power-of-attorney instrument itself. *Williamson*, 2016 Ark. App. 606, 509 S.W.3d 685. Although the principal may or may not have subjectively intended to authorize certain powers, her subjective intent must yield to the plain meaning of the words employed in the agreement. *See Vogelgesang v. U.S. Bank, N.A.*, 92 Ark. App. 116, 211 S.W.3d 575 (2005).

Subchapter 2 of the Arkansas Uniform Power of Attorney Act is titled "Authority." Subsection 201(c) provides:

> Subject to subsections (a), (b), (d), and (e), if a power of attorney grants to an agent authority to do all acts that a principal could do, the agent has the general authority described in **§§ 28-68-204–28-68-216**.[3]

Ark. Code Ann. § 28-68-201(c) (Supp. 2021). Subsection 202(a) provides that an agent has the authority described in sections 28-68-204 through 28-68-217 if the power of attorney refers to general authority with respect to the descriptive term for the subjects stated or cites the section in which the authority is described. Ark. Code Ann. § 28-68-202(a) (Repl. 2012). Further, a reference in a power of attorney to general authority with respect to the descriptive term for a subject in sections 28-68-204 through 28-68-217 or a citation to a section of

---

[3]The general authority described in sections 28-68-204 to -216 (Repl. 2012) includes: - 204 (real property), -205 (tangible personal property), -206 (stocks and bonds), -207 (commodities and options), -208 (banks and other financial institutions), -209 (operation of entity or business), -210 (insurance and annuities), -211 (estates, trusts, and other beneficial interests), -212 (claims and litigation—which authorizes the agent to submit to alternative dispute resolution), -213 (personal and family maintenance), -214 (benefits from governmental programs or civil or military service), -215 (retirement plans), -216 (taxes), and -217 (gifts).

sections 28-68-204 through 28-68-217 incorporates the entire section as if it were set out in full in the power of attorney. Ark. Code Ann. § 28-68-202(b).

In *Williamson*, a nursing-home resident completed a statutory form power-of-attorney document, which listed categories for the principal to choose what authority to grant the agent. 2016 Ark. App. 606, 509 S.W.3d 685. The resident did not select the category for claims and litigation, which alone among the listed categories encompassed the power to agree to arbitration. *Id.* We held that the agent did not have the authority to sign the arbitration agreement. *Id.*

Similarly, in *Moss*, a nursing-home resident signed a document that stated, "I wish for [my agent] to have financial & healthcare power of attorney." 2020 Ark. App. 355, at 2, 605 S.W.3d at 292. We held that the power of attorney did not grant authority to the resident's agent to do all acts that a principal could do under section 28-68-201(c) but instead referred to two general subjects with no further explanation. *Id.*

In this case, similar to *Williamson* and *Moss*, the 2014 power of attorney does not grant Russell the authority "to do all acts a principal could do," as contemplated by Arkansas Code Annotated section 28-68-201(c), but rather specifically references "any stock, bond or other financial investment, real estate and medical issues." Further, Ashton Place's argument that the inclusion of "my Attorney in fact pursuant to A.C.A. 28-68-201 et seq." indicated that Pelham granted Russell all powers within that subchapter was not raised to the circuit court. Thus, it is not preserved for our review. *Robinson Nursing and Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 586 S.W.3d 624. We therefore conclude that the power of attorney did not grant

6

Russell the authority to bind Pelham to the arbitration agreement, thereby invalidating the agreement.

Ashton Place additionally claims that the circuit court's decision runs afoul of the United States Supreme Court's decision in *Kindred Nursing*, 581 U.S. 246. In *Kindred*, two plaintiffs sued a nursing home concerning the death of residents in its care. *Id.* Their agents with general comprehensive powers of attorney signed identical arbitration agreements on behalf of the residents when they were admitted into the nursing home. *Id.* The powers of attorney did not expressly grant authority for their agents to agree to arbitrate, and a Kentucky court held that because the powers of attorney did not specifically authorize the agents to waive the fundamental right to trial granted by the Kentucky Constitution, the arbitration agreements violated Kentucky's public policy and were unenforceable. *Id.*

The United States Supreme Court overruled the Kentucky court and held that the special "clear-statement" rule of Kentucky law—the requirement of an express delegation of authority in a power of attorney to agree to arbitration—unlawfully singled out arbitration agreements for different treatment from other agreements and violated the Federal Arbitration Act. *Id.* at 251–52. In this case, the power-of-attorney statutes at issue do not discriminate against arbitration agreements. We thus hold that the decision here does not conflict with *Kindred Nursing*.

Accordingly, because Russell did not have the authority to bind Pelham to the arbitration agreement, there is no valid arbitration agreement to enforce. We therefore affirm the circuit court's denial of the motion to compel arbitration.

7

Affirmed.

GRUBER and BROWN, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellant.

*Caddell Reynolds, P.A.*, by: *Spencer Vereen*, for appellee.